UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:                                                    Chapter 11

Gates Community Chapel of Rochester, Inc.,                Case No. 18-20169

                          Debtor.
---------------------------------------------------------

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION TO SELL REAL PROPERTY NOT IN THE ORDINARY COURSE OF BUSINESS AND PAY CLOSING COSTS, INCLUDING PROFESSIONALS**

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), in furtherance of his duties and responsibilities, set forth in 28 U.S.C. §§ 586(a)(3),(5), submits this objection to the Motion to Sell Real Property Not in the Ordinary Course Of Business and Pay Closing Costs, Including Professionals, filed by Gates Community Chapel of Rochester, Inc., (the "Debtor"). In support of this objection, the United States Trustee respectfully submits as follows:

## BACKGROUND

1.  On February 23, 2018 ("Petition Date"), Gates Community Chapel of Rochester, Inc., filed a petition for relief under chapter 11 of the United States Code.

2.  Following discussions at the most recent hearing before this Court, on December 4, 2018, the Debtor filed a Motion to Sell Real Property Not in the Ordinary Course of Business and Pay Closing Costs, Including Professionals (the "Motion"). ECF DKT 164.

3.  An Order was entered shortening time for a hearing on the Motion. ECF DKT 166. The hearing is scheduled for December 19, 2018.

## FACTS

4.  The Motion lists five contracts for sale of real property (Motion 2, ¶ 5(A)-(E)).[1]

---

[1] There are actually two paragraphs on page 2 numbered as "5." This information is found in the second of those number 5 paragraphs, located between ¶ 6 and ¶ 7.

1

The gross sale amounts total $1,376,000. Tax assessed values total $1,487,027. The 6% estimated real estate commissions total $82,560. The proceeds after real estate commissions total $1,293,440. This would be further reduced by $2,500 for the real estate attorney (proposed in the Motion at $500 for each closing) for a balance of $1,290,940. No proposed closing statements are provided to show other expenses of sale, such as liens or real estate taxes.

5. The Motion outlines "[s]pecific issues related to each property" but does not state the source of the information. For example, ¶8.(A) states that this parcel "has little value for homebuilders or subdivisions." If this is the opinion of the Debtor versus a developer or a real estate professional, that should be so noted and why they reached this opinion.

6. Paragraph 8.(B) on page 3 of the Motion states that the parcel is "integral to the Debtor" and references an affidavit "to be filed" that further explains how this impacts the mission of the Debtor's ministry. Said affidavit of Pastor Fletcher Brothers has not, as of 2:00 p.m. on Monday, December 17, 2018, appeared on the Court's docket or been served on parties so that they have sufficient time to review and respond before the hearing scheduled for December 19, 2018. Because the Debtor's Motion offered to provide this further information and has not, it appears the Motion is incomplete.

7. Paragraph 8.(B) also reveals that 32 plus acres are proposed to be retained by the Debtor to "preserve Cowboy Town and its integral mission to the ministry of the Debtor." In contrast, an earlier document prepared by the realtor stated the acreage was to be retained because the "Pastor would like to reserve . . . 20 ± acres . . . near his personal home." See Letter of November 6, 2018 form John "Thomas" Galvin, Jr., addressed to Dibble & Miller, P.C., ECF DKT 152.[2] No value for the reserved acreage is provided, nor how removing it impacts the sale

---

[2] In the month between the realtor's letter and the filing of the Motion, the acreage the Pastor wishes reserved for his use increased more than 50% from 20± to "approximately 32" (or, more specifically, per the sale contract attached to the Motion as Exhibit B, 32.9 acres. ECF DKT 164-3).

2

price of the adjoining acreage. No explanation is provided why its exclusion from the sale benefits creditors, or how the principal of the Debtor is not conflicted in his role as fiduciary by reserving the acreage that adjoins his personal residence.

8. Paragraph 8.(D) on page 4 of the Motion states that property is in the process of being transferred to the Debtor but fails to state when that transfer is expected to occur and what risks exist if the transfer does not occur, or if a sale of the property cannot happen.

9. The Contract for the above property does not list a complete address for the property noted above and instead provides only a blank and then Rock Stream Road.

10. This property of 28 acres on Rock Stream Road with a tax assessed value of $44,400 does not appear to be listed on the schedules.

11. The Motion states that the Debtor will file a proposed closing statement on the docket no later than 3 business days prior to any scheduled closing (Motion 4, ¶ 10).[3] Proposed closing statements generally are included as exhibits to Motions to Sell Real Property in order to clearly show what liens and other expenses link to each individual sale. Without that information, it cannot be determined how each individual sale effects the Debtor and creditors to determine if the sale benefits the estate and creditors or what risks exist should one or more of the sales fall through.

12. No estimated closing dates are given for the proposed sales in the motion. No estimated dates for distribution of funds to lienholders and for closing expenses is provided.

13. The Motion gives broad overviews of the liens and what properties they affect, without providing breakdowns of how the sale funds will be applied or in what order to give

---

[3] It is not clear what purpose is served by later filing proposed closing statements 3 days before the sales if the Debtor is seeking approval at this time for those sales. If the Debtor's intention is that parties would have an opportunity to object to sales upon the filing of the proposed closing statements, that needs to be made clear in the proposed order. Also, it is not clear what notice there would be to affected creditors as the Motion is silent as to notice and service of any future proposed closing statements.

3

creditors a clear picture of how the proposed sales impact their claims. In fact, the Motion states that "[b]y this sale, the Debtor . . . pays off **most** of the debtor's secured creditors" (emphasis added). See Motion 5 ¶ 11.

14. Interestingly, the proposed sales do not include, arguably the most valuable parcel, the 42 acres that comprise the 1,167 feet of Seneca Lake frontage. See Motion 5 ¶ 11.

15. The Proposed Order Authorizing Sale of Real Property provides a provision for paying professionals but does not itemize the professional fees the Proposed Order asks the Court to approve, despite the Motion referencing 6% for the realtor and $500 per closing for the attorney. It is not clear from the language in the Proposed Order specifically what professionals are included or what compensation is expected. The Debtor has hired various professionals (e.g., surveyor, appraiser and architect) during the pendency of the case and, without further information, it is not clear if those professionals expect to be paid from the sale closing of these properties.

16. There is no discussion of the risks or ramifications should any of sale contracts fail to be completed.

17. There is relatively little information on the purchasers of the property. As such, this Court and parties in interest do not know if the purchasers are unrelated third parties and whether they have connections to the debtor, its employees or the United States Trustee and his employees.

18. While sales documents are included, many are such poor copies that names and numbers cannot clearly be identified.

19. At least one of the contracts (638 Rock Stream Road), has not been checked as having been accepted by the debtor.

20. It is unclear from the documents provided whether the sales price is reasonable.

The only values provided in the motion is the contract price accepted and the tax assessed value, which may not be relevant for determining price as the debtor is a tax exempt organization and would not generally take the time to challenge an assessment when there is no benefit achieved. Frequently, a movant would attach the listing or at least the listing price for each property, how long it has been on the market along with comparables. Second, even if the tax values were sufficient to show that the price offered is a reasonable sales price, in this case, the tax assessed value is often substantially higher than the contract price. For example, the property known as 5612 NYS Rt 14 shows that the contract price is $70,000 with a tax assessed value of $130,000. The Debtor's schedules also list the value of this property at $130,000. No explanation for the lower contract price is provided. Similarly, 638 Rock Stream has a contract value of $652,000 with a tax assessed value of $925,000. Again, the schedules list's the value of this property at the higher amount of $925,000. The Motion is silent as to why a contract of almost $300,000 less is reasonable.

21. The Motion is silent as to when unsecured creditors could expect to be paid from these proceeds, who would hold the funds in the interim etc... and whether they would be paid pursuant to a Plan of Reorganization etc....

22. The Motion is silent as to how long these properties have been on the market and what has been done to market them.

## RELEVANT AUTHORITY

23. Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. § 363.

24. When a debtor seeks to sell substantially all, or substantially all, of its assets outside of a plan of reorganization or liquidation, the Second Circuit requires that the decision to

sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir.); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

25. As such, the court must find that the debtor has a "good business reason" to grant a sale under 11 U.S.C. § 363 outside the ordinary course of business. The relevant factors in consideration of such a request to sell assets include:

[t]he proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

*In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

26. The applicant bears the burden of demonstrating that the proposed sale will aid in the debtor's reorganization and is supported by good business judgment. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 677 (Bankr.S.D.N.Y.1989). Once the Debtor has met this burden, a presumption arises that the decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the Debtors. *See In re Residential Capital, LLC, et al.*, 2013 WL 3286198 (Bankr. S.D.N.Y. 2013) (quoting *Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)).

**ARGUMENT**

27. The Motion fails to contain sufficient information for parties and this court to make a determination on whether the sales are in the best interest of the estate. For instance, the motion is lacking critical information. Estimated closing costs are not disclosed (other than realtor fees and closing attorney fees) while other administrative costs are missing entirely, which might leave creditors with an incorrect impression as to what funds may be available. Moreover, parties are

lacking critical details regarding the sales, such as whether the parties are disinterested 3rd parties, why the sales prices are reasonable, why withholding 32 acres is reasonable, critical to the overall mission of Gates Community Chapel and in the best interest of the estate. Indeed, parties need to have the Debtor set forth alternatives, clearly laying out what that property would be worth if sold as a whole and what it is worth sold without the "cowboy town" acreage so that they may make a decision based on all relevant factors. Parties also should know whether the sales will be in connection with a viable Plan of Reorganization as courts should not permit a debtor to sell the majority of its assets without the benefit of a viable disclosure statement and plan. Here, the plan and disclosure statement are not capable of confirmation. See Objections of the United States Trustee and New York State.

**WHEREFORE** the United States Trustee requests that the Court deny the Motion, together with any other and further relief the Court may deem just and necessary.

Dated: December 17, 2018

Respectfully submitted,
WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE FOR REGION 2

By: /s/ Kathleen D. Schmitt
Kathleen Schmitt
Assistant United States Trustee
100 State Street, Suite 6090
Rochester NY 14614
(585) 263-5706